IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-4025-01-CR-C-SOW |
| | ) | |
| ARTHUR LEE RAINEY, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On January 12, 2009, defendant Arthur Lee Rainey, Jr., filed a motion to suppress evidence. The Government filed suggestions in opposition. A hearing on the motion was held on February 19, 2009.[1]

Columbia Police Department Officers Jonathan Logan and Tim Giger testified at the hearing. The court finds the credible evidence presented at the hearing establishes the following relevant facts.

On April 2, 2008, Officers Logan and Giger responded to 2607 Rose Drive, Columbia, Missouri, pursuant to information given to them by police dispatch, stating there was a burglar alarm going off at the residence. After doing a perimeter check of the residence, the officers knocked at the door. The door was opened by Stevens, a resident of the address. Stevens voluntarily consented to the officers' request to enter the residence to discuss the burglar alarm.

Upon entry, Officers Logan and Giger immediately noticed a strong smell of marijuana. The officers were also fairly certain at this point that the burglar alarm had been a false alarm. Based on the strong smell of marijuana, the officers had reasonable suspicion that drug activity was occurring in the residence, and decided to investigate further.

For their safety, the officers determined there was another person present in the residence and asked Stevens to have the individual come downstairs so they could speak with them both.

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

The officers spoke with Stevens and the person from upstairs and identified them as Thomas C. Stevens and Arthur Rainey. The officers also discovered that Rainey was on probation for a narcotics offense. The officers noted both Rainey and Stevens were acting nervously.

Officer Logan told Rainey and Stevens that he could smell marijuana, and Stevens responded that they had been smoking marijuana prior to the officers' arrival. Logan asked Stevens if there was still marijuana in the residence. Stevens said, "Yes," and voluntarily handed to Logan a small pouch of marijuana. While Logan was speaking with Stevens, Officer Giger was watching Rainey, who was fidgeting, and appeared to be trying to conceal something by moving papers on the small table next to him. Officer Giger was concerned about a possible weapon under the papers and observed a small stem of marijuana. Based on his concerns, Officer Giger directed Rainey to keep his hands on his knees where they could be seen. Rainey did not comply with Giger's request. Officer Giger then requested Rainey to stand up so he could be handcuffed for officer safety purposes. While Giger was attempting to put the handcuffs on Rainey, Rainey pulled away from Giger, and with his hand, tried to go into his front pocket area. Rainey's actions resulted in Giger becoming concerned Rainey may have a weapon in his front pocket. Giger struck Rainey's right arm with his right fist and pushed Rainey off balance and into a coffee table in the middle of the room. Officer Logan pulled out his department-issued taser, pointed it at Rainey, and told him that if he did not cooperate, he would be tased. Officer Giger completed handcuffing Rainey, examined his front pocket area and found nothing. Rainey's counsel claimed in court that Rainey was just trying to pull up his baggy pants.

Rainey's suspicious actions and resistance to being handcuffed, in conjunction with the circumstances that had already occurred at the residence, gave the officers probable cause to believe that both Rainey and Stevens were engaged in criminal activity, and that additional evidence subject to seizure was on the premises of the residence. Based on this probable cause, the officers arrested both defendants, handcuffed Stevens, and read both Stevens and Rainey their Miranda warnings.

Officer Giger examined the area where Rainey was attempting to hide something, concerned there may be a weapon. Officer Giger viewed a bag of ecstasy pills that were now in

plain view on the table. The pills had come into plain view on the table as a result of the scuffle between Rainey and Officer Giger.

Officer Logan then asked Stevens if there was more marijuana in the house. Stevens said, "Yes," and told the officers where it could be found. Officers examined the area as directed by Stevens, and found additional marijuana and observed a shotgun next to where the marijuana and ecstasy pills were located.

Officer Giger then examined the area where Rainey had been seated, checking for weapons, and discovered a false container (Sprite soda can), which had a small amount of marijuana and what looked like cocaine residue.

At this point, based on the sequence of events that had occurred, the officers conducted a protective sweep of the residence for their safety. During the protective sweep, Officer Logan went into an upstairs bedroom where, in plain view on the floor, was a red glass bong and two small bags of marijuana.

The officers asked for consent to search the residence, but consent was denied.

The officers, thereafter, sought a state search warrant for the residence. They contacted a narcotics officer to complete the search warrant application. Officers Logan and Giger waited outside the residence to ensure security while awaiting the search warrant. Rainey and Stevens were transported to the Police Department by additional Columbia Police Department officers.

Officers Logan and Giger, with a valid signed search warrant and the assistance of additional officers, conducted a search of the residence. The officers recovered 562 grams of cocaine, 186 grams of "crack" cocaine, 535.9 grams of ecstasy, 42 grams of marijuana, an electronic scale, five firearms, and approximately $34,000 in United States currency.

## Discussion

*Initial Entry*

The initial entry of Officers Logan and Giger to the residence was clearly based on consent voluntarily granted by resident Stevens. Communications between officers and citizens that are consensual and involve no coercions or restraint of liberty are outside the scope of the Fourth Amendment. United States v. Johnson, 326 F.3d 1018, 1021 (8th Cir. 2003). There is no evidence that Stevens felt he had to open the door, or consent to the officers entering the

residence. Thus, the entry of the officers into the residence was a consensual encounter and did not implicate the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 434 (1991); Florida v. Royer, 460 U.S. 491, 497 (1983).

*Reasonable Suspicion*

Immediately upon entry into the residence, the officers were overwhelmed with the smell of marijuana and, at this point, had reasonable suspicion that illegal drug activity was occurring. Based on their reasonable suspicion, even if the illegal drug activity may not have authorized a custodial arrest under the city's ordinances, the officers were entitled to further investigate.[2] In United States v. Banks, 553 F.3d 1101, 1104 (8th Cir. 2009), the Eighth Circuit Court of Appeals held that a police officer may stop and briefly question a person if the officer has a reasonable, articulable suspicion of criminal activity, even if it was for a petty misdemeanor that did not authorize custodial arrest.

The subsequent encounter between the officers and Rainey and Stevens was the type of minimally intrusive seizure set forth in Terry v. Ohio, 392 U.S. 1 (1968).[3] It is well established that under Terry, a law enforcement officer may stop and briefly question an individual if the officer has a reasonable, articulable suspicion that the person has committed or is about to commit a crime. United States v. Banks, 553 F.3d at 1104; United States v. Johnson, 326 F.3d at 1022. Under Terry, an officer may conduct an investigation reasonably related in scope to the circumstances which raised the reasonable suspicion in the first place. Banks at 1105. In this case, the officers' request for Rainey to come downstairs and speak with them, the officers' subsequent identification of Rainey and Stevens, and short conversation with them regarding the

---

[2]Rainey argued at the suppression hearing that the City of Columbia, Missouri, ordinance did not authorize custodial arrests for possession of minimal amounts of marijuana.

[3]The "Supreme Court jurisprudence has placed police-citizen encounters into three tiers or categories: First, there are communications between officers and citizens that are consensual and involve no coercion or restraint of liberty. Such encounters are outside the scope of the Fourth Amendment. Second, there are the so-called Terry-type stops. These are brief, minimally intrusive seizures but which are considered significant enough to invoke Fourth Amendment safeguards and thus must be supported by a reasonable suspicion of criminal activity. Third, there are highly intrusive, full-scale arrests, which must be based on probable cause." United States v. Johnson, 326 F.3d 1018, 1021 (8th Cir. 2003).

smell of marijuana in the residence were all proper, based on the officers' reasonable suspicion that drug activity was occurring in the residence. Further, Rainey's argument that a Terry-type investigative seizure does not apply to a residence is without merit. See United States v. Johnson, 528 F.3d 575, 579-80 (8th Cir. 2008) (applying Terry reasonable suspicion standard to investigatory detention of occupant of an apartment where a search warrant was being executed); United States v. Cash, 378 F.3d 745, 748 (8th Cir. 2004) (applying Terry reasonable suspicion standard to protective sweep of a residence). Therefore, this court finds the officers' conversation with Rainey and Stevens prior to handcuffing Rainey did not violate Rainey's Fourth Amendment rights.[4]

*Pat-Down Search of Rainey*

When Rainey began to act suspiciously and, subsequently, would not comply with Giger's directions to keep his hands on his knees where the officers could see them, Giger was justified in putting handcuffs on Rainey and conducting a protective pat-down of Rainey's person. "A pat-down search . . . protects the officer's personal safety while dealing with a person he reasonably believes may be armed and presently dangerous." United States v. Davis, 202 F.3d 1060, 1061 (8th Cir. 2000). A protective pat-down or frisk is warranted if "specific articulable facts taken together with rational inferences" support the reasonable suspicion that a party was potentially armed and dangerous. United States v. Clay, 640 F.2d 157, 159 (8th Cir. 1981). "To be constitutionally reasonable, a protective frisk must . . . be based upon reasonable suspicions that criminal activity is afoot." United States v. Davis, 202 F.3d 1060, 1061 (8th Cir. 2000). Pat-down searches normally occur in situations similar to the instant case where a pat-down is conducted during an investigative seizure of persons suspected of criminal activity. Id.

Specifically, in this case, the smell of marijuana, the subsequent admission to smoking marijuana, the voluntary relinquishment of a bag of marijuana to the officers, and Rainey's known probation status for narcotics, gave rise to reasonable suspicion that criminal activity was afoot. These surrounding circumstances, in conjunction with Rainey's nervous and suspicious

---

[4]The court notes that Rainey has no standing to object to the conversation between the officers and Stevens. Further, to the extent such conversation involved questioning, Miranda was inapplicable because the questioning was part of a Terry-type investigative seizure.

5

behavior, gave rise to Officer Giger's reasonable safety concerns and suspicion that Rainey may be armed and presently dangerous. See United States v. Davis, 202 F.3d at 1063 ("an individual's actions . . . may both crystallize previously unconfirmed suspicions of criminal activity and give rise to legitimate concerns for officer safety."). Based on Officer Giger's reasonable safety concerns, his protective actions of putting Rainey in handcuffs and the frisk of Rainey's person did not violate Rainey's Fourth Amendment rights.

*Probable Cause*

Rainey's resistance to being handcuffed, in conjunction with the totality of circumstances, promoted the officers' reasonable suspicion of criminal activity into that of probable cause. At this point, the officers had probable cause to believe both defendants were engaged in drug-related criminal activity, and that evidence of that criminal activity, subject to seizure, was on the premises. See United States v. Adams, 346 F.3d 1165, 1169 (8th Cir. 2003) (probable cause is determined from the "totality of circumstances as set forth in the information available to the officers at the time of the arrest."). Based on such probable cause, the officers also handcuffed Stevens, and read both Rainey and Stevens their Miranda rights. This warrantless arrest complied with the Fourth Amendment. Probable cause sufficient to make a warrantless arrest exists when the facts and circumstances are sufficient to lead a reasonable police officer to believe that the defendant has committed or is committing an offense. United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008). "A probability or substantial chance of criminal activity, rather than an actual showing of criminal activity is sufficient." Id. (citations omitted). In this case, examination of the events leading up to the arrest of Rainey and Stevens established a substantial probability that Rainey and Stevens were currently involved with illegal narcotics, and that additional evidence of such involvement was located on the premises. Officers Logan and Giger had probable cause to arrest Rainey and Stevens.

*Plain View*

During the scuffle to get Rainey handcuffed, furniture had been knocked around, and a bag of ecstacy pills was now in plain view.

6

Police may seize, without a warrant, items which are "1) in plain view, (2) when observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent." United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008).

In the instant case, as already set forth, the officers were properly in the residence when they observed the bag of pills in plain view. The officers testified that based on their experience and training, the pills were immediately identified as the illegal controlled substance, ecstacy. Therefore, the seizure of the bag of ecstacy pills qualifies for the plain view exception to the warrant requirement, and did not violate Rainey's constitutional rights.

*Inevitable Discovery*

After Rainey and Stevens were taken into custody, the subsequent marijuana and firearm seized from the residence prior to the issuance of the search warrant is admissible under the inevitable discovery doctrine. Evidence need not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). See also United States v. Thomas, 524 F.3d 855 (8th Cir. 2008). In this case, the preponderance of evidence supports that the officers had ample probable cause to obtain a search warrant prior to finding the additional evidence, and planned to get a warrant if consent was denied. Thus, the evidence would have been discovered regardless of whether or not the limited viewing of areas adjoining the arrest were valid. The officers already had evidence of the overwhelming smell of marijuana in the residence, Stevens' admission that he and Rainey were smoking marijuana, Stevens voluntarily giving the officers a bag of marijuana, Rainey's suspicious actions and resistance to being handcuffed when officers became concerned for their safety based on his actions, Rainey being on probation for a narcotics offense, and the ecstacy pills in plain view on the table where Rainey had been suspiciously moving the papers. Clearly, the officers had already established an investigation separate from the additional marijuana and firearm discovered post-arrest, and already had probable cause that Rainey and Stevens were involved in illegal narcotics activity and that evidence subject to seizure was on the premises of the residence. Based on such probable cause, the request for a search warrant for the residence was inevitable. Thus, this court finds that the additional post-arrest drugs and firearm found in the

7

residence prior to the issuance of the search warrant would have ultimately and inevitably been discovered when the officers conducted the subsequent search of the residence. See Nix v. Williams, 467 U.S. at 444. Based on such inevitable discovery, any issue as to the legality of moving the chair to find the additional marijuana identified by Stevens, discovering the gun under the chair, or finding and opening of the false container (Sprite soda can), is irrelevant, and does not support suppression. The inevitable discovery doctrine affirms the belief that police should not be placed in a worse position than they would have occupied in the absence of error or misconduct. Id. at 444.

*Protective Sweep*

The protective sweep done by the officers after taking custody of Rainey and Stevens, but prior to obtaining a search warrant for the residence, was done for reasonable safety concerns and did not violate Rainey's Fourth Amendment rights. A protective sweep does not violate the Fourth Amendment, and is permissible without a search warrant or probable cause, when done in conjunction with an in-home arrest and the searching officer possesses a reasonable belief, based on specific articulable facts, that the area to be swept harbors an individual posing a danger to those on the arrest scene. Maryland v. Buie, 494 U.S. 325, 327 (1990), United States v. Cantrell, 530 F.3d 684, 690 (8th Cir. 2008). "The level of suspicion required for such a protective sweep is the same level of suspicion required for a stop and frisk under Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Cantrell, 530 F.3d at 690. The circumstances of Rainey's arrest, including the nervousness and suspicious behavior, the strong smell of marijuana, the admitted marijuana use, the marijuana voluntarily relinquished to the officers, the resistance by Rainey in being handcuffed, and the ecstacy pills found in plain view, gave the officers reasonable belief that there could be additional persons in the residence who could pose a risk of harm to the arrest scene. The protective sweep of the residence conducted by officer Logan does not warrant suppression of evidence.

At the hearing, defense counsel confirmed that there is no challenge being made to the validity of the warrant itself, only that it was based on illegally discovered evidence.

Thus, for the reasons set forth above, defendant's arguments do not support suppression of the evidence.

8

IT IS, THEREFORE, RECOMMENDED that defendant Arthur Lee Rainey, Jr.'s, motion to suppress be denied. [31]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 16th day of March, 2009, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge